Nov. Term,
1861.

DUNN
v.
STANWOOD.

*J. E. McDonald* and *A. L. Roache*, for the appellee.

---

### DUNN v. STANWOOD.

*Friday,*
*December 13.*

APPEAL from the *Marion* Circuit Court.

DAVISON, J.—*Stanwood*, who was the plaintiff, sued *Dunn* for goods sold and delivered. With his complaint he filed an account, thus stated:

" *Thomas Dunn*, of *Indianapolis*, bought of *Jacob Stanwood*,
    "1857, *Nov.* 19.—1 qr. pipe *Otard, Dupuy &*
        *Co.* Brandy, as per custom house certificate,
        No. 497, galls. 40½, at $5.25,  - - - - - - - $212.63
    "1858, *Jan.* 15.—1 qr. cask *Cushman's* Old
        Champaigne Brandy, 41, at $4.50,  - - - - 184.50
    "Cartage,  - - - - - - - - - - - - - - -       88
                                                  ──────
                                                  $398.01.'

Defendant answered: 1. By a general traverse; 2. Payment. Reply in denial of the second paragraph. Verdic\ for the plaintiff; upon which the Court, over a motion for a new trial, rendered judgment, &c.

The record contains a bill of exceptions which shows that

during the trial, the plaintiff produced the deposition of one

*Elijah Powers*, who therein testified as follows: "I am acquainted with the parties. I know that *Stanwood* sold *Dunn* two quarter casks of brandy, at different times—one quarter cask was sold at $4.50 per gallon, and the other at $5.25 per gallon. I was in the city of *New York* where *Stanwood* carried on business, and purchased the brandy referred to for *Dunn*, at the request of my son, *John C. Powers*, who gave me a verbal order to purchase it for *Dunn;* and afterward he, *Dunn*, stated to me that he had received the brandy with the invoices direct from *Stanwood*. *Dunn* refused to pay me the bill for the brandy, stating that if he did so he would have to pay it over again to *Stanwood*, because he had received the brandy, with the invoices, from him and in his name. When this occurred, myself and *John C. Powers* were carrying on the wholesale liquor business at *Indianapolis*, under the name of *Powers & Co.* At the time of the above refusal we had been selling *Dunn* goods, and presented our bill, embracing therein the two quarter casks of brandy, because *Stanwood* expected us to collect the amount due for the brandy as his agents, but *Dunn* refused payment, as above stated." Plaintiff also produced the deposition of said *John C. Powers*, in which he testified, substantially, to the same facts stated in the former deposition.

Defendant then proved by one *William La Rue*, a witness, that he was present at a settlement which took place between *Dunn* and *Powers & Co.;* that a bill was presented by them, and was before the parties to that settlement; that the whole amount of that bill was then settled, and left the defendant creditor to *Powers & Co.* about three dollars. At this stage of his testimony, a paper was shown to the witness, which he recognized as the paper before the parties to the settlement at the time it was made—especially he recognized the paper by the figures on its back; but he did not read the paper, and does not know the contents of it, other than what he heard from the parties at the time. Heard no mention made of brandy. Witness stated that the paper was in the handwriting of *John C. Powers*. The defendant then offered the paper in evidence, and also

offered to prove by the witness, statements made at the time of the settlement by *Dunn, Elijah Powers* and *John C. Powers*, to the effect that every item in the bill recognized by the witness was then settled, in that settlement. But the Court refused these offers, and the defendant excepted.

The paper offered in evidence is set out in the bill of exceptions, and contains two items of account which are, in appearance, similar to those stated in the account sued for in this action. The refusal of the Court to admit the offered evidence involves the only question in the case. As we understand the testimony to which we have referred, *Elijah* and *John C. Powers* were agents of the plaintiff, authorized to collect his demand against the defendant. Assuming that to be the case, a payment of it to them would, of course, bar the action, and the result is, the proposed evidence, if it tended to prove that that demand had been so paid or satisfied, should have been admitted.

The paper offered in evidence is, it seems to us, sufficiently identified as having been presented to the defendant, and the proof is ample that its contents were before the parties to the settlement when it took place. If then the paper contains the items of account now sued for, evidence that the parties, while settling, admitted that every item in the paper was then settled, would be legitimate; because, in the event that the *Powers* were found to be the plaintiff's agents, such evidence, in the absence of contrary proof, would be conclusive against him. The offered evidence was doubtless proper for the consideration of the jury. What influence it should have, when considered in reference to other evidence in conflict with it, is a question for their determination. In our opinion, the exception to the ruling of the Court was well taken.

*Per Curiam.* — The judgment is reversed, with costs. Cause remanded, &c.

*T. D. & R. L. Walpole*, for the appellant.

*John Coburn*, for the appellee.